IN THE UNITED STATES BANKRUTPCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

FILED

JUL 27 2018

CLERK, U.S. BANKRUPTCY COURT
WEST DIST. OF PENNSYLVANIA

| | |
|---|---|
| In re: | Case No. 17-22024-GLT |
| | Chapter 7 |
| SUE A. REAGAN, | |
| *Debtor.* | |
| | |
| SUE A. REAGAN, | Adv. No. 17-02172-GLT |
| *Plaintiff,* | Related to Dkt. No. 26 |
| v. | |
| EDUCATIONAL CREDIT MANAGEMENT CORP., | |
| *Defendant.* | |

## MEMORANDUM OPINION

Counsel:   Michael S. Lazaroff, Law Office of Michael S. Lazaroff, Saxonburg, PA for the Plaintiff, Sue A. Reagan

John P. Neblett, Reedsville, PA for the Defendant, Educational Credit Management Corp.

Sue Reagan, a chapter 7 debtor, seeks to discharge her student loans despite enrolling in an income-based repayment plan ("IBR Plan") that reduced her monthly payments to $0. The Educational Credit Management Corp. ("ECMC")—a seasoned veteran of this line of litigation—says this should stop her at the summary-judgment stage. It argues Reagan has not pled sufficient facts to show she cannot maintain a minimal standard of living while making her payments. Reagan argues she is currently unable to maintain such a standard. The Court holds that there is a genuine question of material fact as to whether the financial circumstances required to qualify for a monthly IBR Plan payment of $0, together with Reagan's income and expenses (as

represented on her bankruptcy schedules), demonstrate that she cannot currently maintain a minimal standard of living while repaying her student loans.

I.

Reagan petitioned for relief under chapter 7 of title 11 of the U.S. Code on May 15, 2017.[1] Nearly three months later, she commenced an adversary proceeding seeking to discharge her student loans under 11 U.S.C. § 523(a)(8), alleging that she would suffer undue hardship if she were forced to continue repaying them.[2] ECMC filed an answer requesting that Reagan's loans remain excepted from discharge,[3] followed by a motion for summary judgment ("*Motion*") arguing that she cannot demonstrate that $0 payments deny her a minimal standard of living.[4] Reagan filed a response in opposition,[5] and ECMC filed a reply.[6] The parties agree that this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I), the Court has jurisdiction to hear it under 28 U.S.C. § 1334, and venue is proper under 28 U.S.C. § 1409(a).[7]

In her *Complaint*, Reagan alleges that she incurred her student loans while pursuing a bachelor's degree in the administration of justice from Westmoreland County Community College and the University of Pittsburgh at Greensburg between 1988–92, as well as a master's

---

[1]    *Voluntary Petition for Individuals Filing for Bankruptcy*, Case No. 17-22024, Dkt. No. 1.

[2]    Dkt. No. 1. Although Reagan named American Education Services as the Defendant in her original complaint, she amended it four times [Dkt. Nos. 3, 5, 7, 11] before finally filing her latest amended complaint [Dkt. No. 13] that complied with the local rules and properly named ECMC as the defendant.

[3]    Dkt. No. 18 at 3.

[4]    Dkt. No. 26.

[5]    Dkt. No. 36.

[6]    Dkt. No. 41.

[7]    Dkt. No. 13 at ¶ 2; Dkt. No. 18 at ¶ 2 (admitting the allegation).

2

degree in criminology at Indiana University of Pennsylvania from 2001–03.[8] The parties agree that ECMC later acquired the loans and is the proper defendant in this matter.[9] Reagan further alleges she cannot maintain a minimal standard of living while repaying her loans and that her current economic situation will persist through "a significant portion of the repayment period" because of her age and physical limitations stemming from multiple surgeries.[10] Finally, she alleges she made a good-faith effort to repay her loans.[11]

        The parties largely agree on the material facts. Reagan is a 60-year-old woman who lives on her own in a mobile home on a rented lot in Greensburg.[12] She is currently employed doing part-time contract work,[13] but expects her income to decrease due to a reduced workload.[14] Although Reagan is admittedly indebted to ECMC,[15] the parties are $500 apart as to the amount of the outstanding loan balance.[16] Reagan is currently enrolled in an IBR Plan in which her monthly payments to ECMC are $0.[17] ECMC acknowledges that, even though money is not

---

[8]     Dkt. No. 13 at ¶ 5.

[9]     Dkt. No. 13 at ¶¶ 3–4; Dkt. No. 18 at ¶¶ 3–4 (admitting the allegation).

[10]    Dkt. No. 13 at ¶ 9.

[11]    Id.

[12]    Dkt. No. 26-1 at ¶ 6; Dkt. No. 39 at ¶ 6 (admitting the fact).

[13]    Dkt. No. 26-1 at ¶ 7; Dkt. No. 39 at ¶ 7 (admitting the fact).

[14]    Dkt. No. 26-1 at ¶ 8 ("Plaintiff expects her income [not] to increase, but rather to be lower in the future due to a reduced workload."); Dkt. No. 39 at ¶ 8 (admitting the fact as modified).

[15]    Id.

[16]    Dkt. No. 26-1 at ¶ 3 (asserting a balance as of October 3, 2017); Dkt. No. 39 at ¶ 3 (disputing the balance). Reagan argues this discrepancy is material, though ECMC argues it is not. Id. To the extent Reagan implies that this constitutes a genuine question of material fact to defeat ECMC's *Motion*, it is insufficient to do so because it has little bearing on whether the balance is dischargeable.

[17]    Dkt. No. 26-1 at ¶ 9; Dkt. No. 39 at ¶ 9 (admitting the fact).

exchanged, Reagan is making her monthly "payments" on the loans.[18] ECMC attached an affidavit to its *Concise Statement of Material Facts*[19] purporting to offer additional information about the IBR Plan and Reagan's financial circumstances entitling her to $0 monthly payments, but the submission did not comply with W.D. Pa. L.B.R. 7056-1(a) and will not be considered.[20]

## II.

Under Fed. R. Civ. P. 56(a) as applied by Fed. R. Bankr. P. 7056, "[t]he [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[21] A fact is material if it "could alter the outcome," while a dispute is genuine "if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[22] Summary judgment is required "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[23]

While the movant bears the initial burden, the Court views the evidence "in the light most favorable to the opposing party."[24] The opposing party may rebut the movant by

---

[18]  Id.; see also Dkt. No. 41 at 3 (citing 34 C.F.R. § 682.215(f)(1)(i)).

[19]  Ex. 4, Dkt. No. 26-3 at 23; see also W.D. PA. L.B.R. 7056-1(a)(1) ("The facts set forth in any party's concise statement shall be stated in separately numbered paragraphs.").

[20]  See Audio Recording of Hearing Held in Courtroom A, May 4, 2018 [hereinafter "Hrg. Audio"] at 10:05:19–10:05:36 (ECMC admits the affidavit is only admissible with respect to the hearing on the *Motion* to the extent it confirms that Reagan's payments are $0 under her IBR Plan).

[21]  FED. R. CIV. P. 56(a); FED. R. BANKR. P. 7056.

[22]  Horowitz v. Federal Kemper Life Assur. Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995).

[23]  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

[24]  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 (1970).

4

"com[ing] forward with specific facts showing that there is a genuine issue for trial" and "present[ing] concrete evidence supporting each essential element of its claim."[25]

Student loans are non-dischargeable in bankruptcy unless they "would impose an undue hardship on the debtor."[26] Although the statute does not define "undue hardship," our Court of Appeals adopted a three-prong test first set forth in Brunner v. New York State Higher Education Services Corp.:

> (1) that the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period for student loans; and (3) that the debtor has made good faith efforts to repay the loans.[27]

Reagan must satisfy all three prongs of the test by a preponderance of the evidence[28] to obtain a discharge of her student loans.[29] As the Faish court explained, "[e]quitable concerns or other extraneous factors not contemplated by the Brunner framework may not be imported into the court's analysis to support a finding of dischargeability."[30] ECMC challenges only Reagan's ability to meet the first prong of the test.[31] Accordingly, the relevant inquiry is whether Reagan

---

[25] Ideal Dairy Farms, Inc. v. John Labatt, Ltd., 90 F.3d 737, 743 (3d Cir. 1996) (emphasis removed) (internal quotation marks and citations omitted).

[26] 11 U.S.C. § 523(a)(8)(A)(i).

[27] In re Faish, 72 F.3d 298, 304–05 (3d Cir. 1995) (quoting Brunner v. N.Y. State Higher Educ. Servs. Corp., 831 F.2d 395, 396 (2d Cir. 1987)).

[28] In re Brightful, 267 F.3d 324, 327 (3d Cir. 2001).

[29] In re Murphy, 535 B.R. 97, 105 (Bankr. W.D. Pa. 2015) ("[A] debtor's inability to demonstrate one of the prongs is fatal to a request for dischargeability.").

[30] Faish, 72 F.3d at 306.

[31] Dkt. No. 26 at ¶ 4; Dkt. No. 26-2 at 4; see also Hrg. Audio at 10:03:50–10:03:57.

has pled sufficient facts to establish a genuine dispute over whether she can maintain a minimal standard of living while making monthly payments of $0 to ECMC.

Reagan may establish her inability to maintain a minimal standard of living by showing she has "extremely low income, compared with the cost of basic necessities."[32] Some courts have adopted a framework to assess whether a minimal standard of living exists by examining the debtor's ability to satisfy the following expenses:

(1)  shelter that is furnished, clean, free of pests and climate-regulated with heating and cooling;

(2)  basic utilities such as electricity, water, gas, and telephone;

(3)  food and personal hygiene products;

(4)  transportation or vehicles (and the ability to service and insure those vehicles);

(5)  life insurance and health insurance (or the ability to pay for medical and dental expenses); and

(5)  modest recreation.[33]

However, even a debtor whose standard of living falls below this level may stumble at the first prong of the Brunner test. Although "[a]n evaluation of the debtor's present income and expenses is required under this prong[,] . . . income and expenses should not be regarded as unalterable."[34] The Court's analysis is not restricted to Reagan's actual financial situation because it "may [also]

---

[32]  See, e.g., In re Williams, 296 B.R. 128, 134 (Bankr. D.N.J. 2003).

[33]  See, e.g., In re Crawley, 460 B.R. 421, 436 (Bankr. E.D. Pa. 2011) (quoting In re Ivory, 269 B.R. 890, 899 (Bankr. N.D. Ala. 2001)); see also e.g., In re Doernte, 2017 WL 2312226 at *5 (Bankr. W.D. Pa. May 25, 2017); In re Jones, 495 B.R. 674, 685 (Bankr. E.D. Pa. 2013); In re Miller, 409 B.R. 299, 311 (Bankr. E.D. Pa. 2009).

[34]  Murphy, 535 B.R. at 109 (internal quotation marks and citation omitted).

consider whether it would be unconscionable to require the Debtor to take any steps to earn more income or to reduce her expenses."[35]

### III.

ECMC relies on In re Greene to argue that Reagan "will be unable to establish her burden under the first prong [of the Brunner test] due to [her] actual participation in the [IBR Plan] with a payment amount of zero."[36] The Greene court acknowledged that a $0 IBR Plan does not "*ipso facto*" prevent a debtor from demonstrating she cannot maintain a minimal standard of living,[37] but it went on to hold that "it is illogical to conclude that a payment of zero could be an undue hardship."[38] ECMC similarly concedes that there is no "*per se* rule"[39] to this effect but then asks the Court to "acknowledge that logically a payment of zero, even for a debtor at a minimal standard of living, could not force a debtor to live below a minimal standard."[40] The difference between a *per se* rule and logical reasoning that precludes the possibility of meeting the first prong of the Brunner test for a debtor enrolled in a $0 IBR Plan is not apparent. To the contrary, "[t]hose

---

[35]   In re Davis, 526 B.R. 136, 144 (Bankr. W.D. Pa. 2015). Some courts include the debtor's ability to participate in an IBR Plan to be one of these steps. Commentators Susan Hauser and David Austin observed that "[i]f strictly applied, such a rule would effectively replace undue hardship discharge under § 523(a)(8) with income-driven repayment (for federal loans), since no debtor could pass the first prong of the Brunner test if he w[ere] unwilling to participate in income-driven repayment." SUSAN E. HAUSER & DANIEL A. AUSTIN, AM. BANKR. INST., GRADUATING WITH DEBT: STUDENT LOANS UNDER THE BANKRUPTCY CODE (2d ed. 2016) 64 (citing In re Booth, 410 B.R. 672, 676–77 (Bankr. E.D. Wash. 2009)).

[36]   Dkt. No. 26-2 at 8.

[37]   In re Greene, 484 B.R. 98, 113 (Bankr. E.D. Va. 2012) (citing Booth, 410 B.R. at 677)).

[38]   Greene, 484 B.R. at 116; see also id. at 120 ("The resulting mathematic reality is that the present required monthly payment of zero on the Student Loan does not impact [the debtor's] ability to maintain a minimal standard of living.").

[39]   Dkt. No. 26-2 at 7.

[40]   Id. at 8; see also Hrg. Audio at 10:03:30–10:03:32 ("It's not a per se rule. We're not arguing that.")

7

debtors whose incomes are low enough to qualify for income-based repayments of $0.00 likely are the very individuals the undue hardship exception for student loans is meant to assist."[41]

ECMC cites a host of cases showing that the availability of an IBR Plan is relevant to whether a debtor can meet the first prong of the Brunner test. The Court notes that these cases all concern debtors who have not yet enrolled in IBR Plans, and they were adjudicated by courts outside the Third Circuit. One court held that "the relevant inquiry for purposes of evaluating 'undue hardship' is whether Plaintiff could make the monthly payment as required by an income-based repayment plan"—even though the debtor was not enrolled in one—and excepted her student loan from discharge because an IBR Plan "would have fixed" her payments at an affordable $267/mo.[42] Another similarly held that a debtor's mere eligibility for an IBR Plan "where the amount of her monthly payment . . . could be as low as $0.00 per month" meant she could not meet the first prong of the Brunner test,[43] while a third held that a debtor's eligibility for an IBR Plan where payments would range from $0–47 meant he could not meet it either.[44] Finally, a Florida bankruptcy court held that any analysis under the first prong "should also consider any available restructuring of student loan debt that would ease the debtor's payment obligations."[45] ECMC

---

[41] In re Nightingale, 529 B.R. 641, 650 (Bankr. M.D.N.C. 2015) (citing REPORT OF THE COMMISSION ON THE BANKRUPTCY LAWS OF THE UNITED STATES, H.R. DOC. NO. 93-137, pt. II, at 140–41 (1973)). Part II of the report "includes . . . notes explaining the purposes, sources, and intended effects of the new legislation." Frank R. Kennedy, *The Report of the Bankruptcy Commission: The First Five Chapters of the Proposed New Bankruptcy Act*, 49 IND. L.J. 422, 422 n.3 (1974).

[42] In re Connor, 526 B.R. 218, 226 (Bankr. E.D. Mich. 2015).

[43] In re Straub, 435 B.R. 312, 317 (Bankr. D.S.C. 2010).

[44] In re Dimoyannis, 2010 WL 1780098 at *3 (Bankr. N.D. Cal. Apr. 29, 2010).

[45] In re Matthews–Hamad, 377 B.R. 415, 421 (Bankr. M.D. Fla. 2007). ECMC cites three other cases that fit the same issue into the third prong of the Brunner test rather than the first, even though it challenges Reagan only on the latter. Both the U.S. Bankruptcy Court for the Western District of Oklahoma and the U.S. Bankruptcy Appellate Panel for the Ninth Circuit held that their debtors could not demonstrate a good-faith effort to repay their student loans because they were eligible to participate in IBR Plans that would have given them affordable payments but had not pursued this option. In re Birrane, 287 B.R. 490, 500 (9th Cir. B.A.P. 2002); In re Robinson, 390 B.R. 727, 733 (Bankr. W.D. Okla. 2008). A 2012 opinion issued by

also cites a case that reversed a student-loan discharge under both the first and third prongs of the Brunner test because the debtor refused to enroll in an IBR Plan that would have made his payments $10/mo.[46]

Cases within the Third Circuit tell a different story. In a 2002 case, ECMC conceded that a debtor could meet the first prong of the Brunner test even though she was eligible for a zero-payment IBR Plan, arguing only that she could not pass the good-faith prong because she had declined to enroll in it.[47] Judge Fox observed that:

> while consideration of the debtor's repayment options is one factor that a court may consider in determining 'undue hardship' under the totality of the circumstances, I am unaware of any decision which holds that the availability of the William D. Ford Federal Direct Loan Program to a debtor—including its 'income contingent repayment plan' option—by itself requires a finding that it would not be an 'undue hardship' to repay the student loan obligation.[48]

In another chapter 7 case before Chief Judge Deller in this Court, ECMC also conceded that a debtor with no income at all who may have been eligible for $0 payments under an IBR Plan could not maintain a minimal standard of living, again challenging her good faith in failing to pursue one.[49]

---

      Judge Agresti in this Court—the only case from the Third Circuit that ECMC references other than Faish—came to the same conclusion. Goforth v. U.S. Dept. of Educ., 466 B.R. 328, 340–41 (Bankr. W.D. Pa. 2012).

[46]    Educ. Credit Mgmt. Corp. v. Rhodes, 464 B.R. 918, 926 (W.D. Wash. 2012).

[47]    In re Newman, 304 B.R. 188, 194 (Bankr. E.D. Pa. 2002) ("In its motion, Education Credit Management Corp. seems to accept that summary judgment in not appropriate on the first of the three Brunner factors."); see also id. at 195 ("[I]f the debtor were to apply for the 'income contingent repayment plan,' she would not need at present to make any monthly student loan repayments under this program. The availability of this option and the debtor's refusal to seek it require, in the view of the defendant, a finding that the plaintiff is not acting in good faith toward repayment of her student loans."). ECMC also challenged the debtor on the second prong of the Brunner test on the grounds that her financial condition may not persist through the repayment period because some of her children would reach adulthood. Id. at 194.

[48]    Id. at 195.

[49]    In re Flickinger–Luther, 462 B.R. 157, 161 (Bankr. W.D. Pa. 2012) (conceding the debtor's inability to maintain a minimal standard of living with no income); id. at 163–64 (proffering the debtor's likely eligibility for $0 payments under an IBR Plan and challenging her good faith for her failure to pursue one).

At the hearing on the *Motion*, ECMC questioned how $0 payments under Reagan's IBR Plan could have pushed her below a minimal standard of living.[50] But courts within the Third Circuit have not framed the issue this way.[51] If a debtor establishes that she cannot maintain a minimal standard of living at any payment amount, the first prong of the Brunner test is satisfied. For example, Judge Frank found that a debtor's monthly income could not maintain a minimum standard of living "even if no portion of the income [were] directed toward repayment of a student loan."[52] He explained that a present inability to maintain a minimal standard of living "renders the [IBR Plan] irrelevant under the first prong" of the Brunner test and that "[t]o hold otherwise would make eligibility in the [IBR Plan] outcome determinative in undue hardship determinations under § 523(a)(8) and would result in the delegation to an administrative agency, the Department of Education, the authority to determine the dischargeability of certain student loans."[53]

The Court finds this logic compelling. The issue is not necessarily whether Reagan's payments of $0 have placed her below a minimal standard of living, but whether she can make her student loan payments *and* still maintain a minimal standard of living. Under these circumstances, Reagan is not required to show that her payments to ECMC are the reason why her living standard is less than minimal. If she finds herself financially underwater, the question of

---

[50] Hrg. Audio at 10:11:21–10:11:31 ("[H]ow can the Debtor argue that now because I'm making this zero repayment, now I'm below a minimal standard of living, and I satisfy the first prong of the test?"); see also id. at 10:10:24–10:10:50 (Neblett: "[W]e have a situation where she's actually been [making payments] for almost two years now. And in my view, if the Debtor had some additional fact—some changed circumstance—some particular reason now that her circumstance would place her below a minimal standard of living, she would have had to bring that out, and I don't think she has.").

[51] See, e.g., Crawley, 400 B.R. at 437; Newman, 304 B.R. at 194–95; Flickinger–Luther, 462 B.R. at 161.

[52] Crawley, 460 B.R. at 437.

[53] Id. at 438; see also HAUSER & AUSTIN, supra note 35 at 64 n.226 (observing that this would "deprive[] the bankruptcy court of jurisdiction, since the U.S. Department of Education could later change the payment amount, outside the scope of the bankruptcy court.")

which obligation pushed her beneath the surface matters little. To a camel whose back is already broken, any straw in his pack is unwelcome.

## IV.

Reagan argues her current income and expenses do place her below that threshold.[54] She points to her bankruptcy schedules as evidence of her financial situation,[55] and she argues that the potential tax consequences of having her remaining loan balance forgiven (at the end of her IBR Plan) as well as the impact of her loans on her credit score as interest continues to accrue are reasons why her enrollment in such a plan should not stand in the way of a hardship discharge.[56] But even if the tax and credit implications of denying Reagan a discharge could be known with certainty and were not merely speculative, neither has any bearing on her present ability to maintain a minimal standard of living.[57] This leaves the Court with two sources of evidence to assess whether she can maintain this standard while repaying her loans: her schedules and the fact that she is enrolled in a $0 IBR Plan. Although the Court does not consider ECMC's affidavit with respect to the IBR Plan, the creditor points to the U.S. Department of Education's regulations to show that Reagan must earn less than 150% of the poverty level to qualify for $0 payments.[58]

---

[54] Hrg. Audio at 10:12:34–10:13:03.

[55] Id. at 10:13:21–10:13:34.

[56] Dkt. No. 36 at 5–6.

[57] The parties also agree that Reagan's loan balance increases by $7 per day, but Reagan has not shown how this impairs her in the present. See Hrg. Audio at 10:14:50–10:15:17.

[58] Dkt. No. 41 at 3 (citing 34 C.F.R. § 682.215(b)).

11

The Court takes judicial notice of Reagan's bankruptcy schedules, which show that her monthly expenses of $1,405[59] exceed her monthly income of $1,286[60] by $119. The expenses include a modest allocation of $190 for home ownership expenses—presumably to rent the lot on which her mobile home sits—and only $20 for entertainment, with the rest divided among those basic necessities the Ivory framework contemplates.[61] Yet Reagan's income is seemingly insufficient to cover even these costs, nor can the Court readily identify any areas that could be trimmed to address the $119 deficiency, even assuming that this budget provides a minimal standard of living. Neither has ECMC suggested that Reagan is capable of increasing her income to improve her situation.

Although many of Reagan's arguments do not pertain to the first prong of the Brunner test, her financial circumstances as represented to the Court by her schedules and enrollment in an IBR Plan in which her payments are $0 present a genuine question of material fact as to whether she is currently unable to maintain a minimal standard of living while repaying her student loans. For the foregoing reasons, ECMC's *Motion* is **DENIED**.

A separate order will issue.

Dated: July 27, 2018

_____
GREGORY L. TADDONIO
UNITED STATES BANKRUPTCY JUDGE

Case administrator to mail to:
Debtor
Michael S. Lazaroff, Esq.
John P. Neblett, Esq.
Robert H. Slone, Esq.
Office of the U.S. Trustee

---

[59] Schedule J, *Voluntary Petition for Individuals Filing for Bankruptcy*, Case No. 17-22024, Dkt. No. 1, 32–33.

[60] Schedule I, *Voluntary Petition for Individuals Filing for Bankruptcy*, Case No. 17-22024, Dkt. No. 1, 30–31.

[61] Case No. 17-22024, Dkt. No. 1, 32–33.